(158 P.3d 345)
No. 94,586

STATE OF KANSAS, *Appellee*, v. DEMETRIUS L. BIRTH, *Appellant*.

Opinion filed May 18, 2007.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, for appellant.

*Lesley Isherwood* and *Kristi L. Barton*, assistant district attorneys, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before BUSER, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Demetrius Birth appeals his jury trial convictions and sentences for aggravated burglary and robbery. First, Birth argues that the admission of hearsay statements of a witness who was not called by the State to testify at trial violated his right to confrontation under the Sixth Amendment to the United States Constitution. Nevertheless, under *State v. Fisher*, 283 Kan. 272, 154 P.3d 455 (2007), Birth waived his right to confrontation when he opened the door to the hearsay evidence during cross-examination of a witness. Next, Birth challenges the trial court's failure to redact an interrogation tape to remove false statements before the tape was played to the jury. Nevertheless, Birth's failure to preserve this issue at trial prevents this court from addressing his argument on appeal.

Birth raises a number of other arguments in his brief, including the following: that the prosecutor committed misconduct; that the trial court should have suppressed the interrogation tape; that there was insufficient evidence for the jury to convict Birth of aggravated burglary; that there was cumulative error; that the trial court erred in failing to consider Birth's financial circumstances before assessing fees to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees; and that the trial court erred in including Birth's prior convictions in his criminal history. Nevertheless, the

only issue with merit concerns the trial court's failure to consider Birth's financial circumstances before assessing BIDS fees. Based on our Supreme Court's recent decision in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006), the case must be remanded to the trial court to consider on the record at the time of assessing BIDS fees under K.S.A. 2006 Supp. 22-4513 the financial resources of Birth and the nature of the burden that payment of the fees will impose. Accordingly, we affirm in part, reverse in part on the BIDS issue, and remand to the trial court to comply with *Robinson*.

Hezzie Kendrick, the victim in this case, had developed what he characterized as a relationship with Amber Williams. Kendrick called and text messaged Williams frequently and loaned money to her on several occasions. Although Williams told Kendrick at one point that she wanted to end the relationship and even threatened to call the police, Kendrick continued calling and text messaging Williams.

One evening in October 2004, Williams came to Kendrick's apartment and asked him for money. Kendrick told Williams that he did not have any money. Kendrick and Williams left the apartment together to go to the liquor store. When they returned to the apartment, Williams used Kendrick's phone and then left Kendrick's apartment to go to the store. When Williams returned to Kendrick's apartment, Williams unlocked Kendrick's front door several times after Williams locked it. Kendrick finally locked the door, and he and Williams went to his bedroom to watch television. Approximately 20 minutes later, Kendrick heard a knock on his door. Although Williams told Kendrick not to answer the door, Kendrick opened the door.

At trial, Kendrick testified that when he opened the door, he was immediately confronted by two men. Kendrick testified that he was pushed back into his apartment and told that this was going to be a robbery. Both of the men entered Kendrick's apartment. At trial, Kendrick identified Birth as the man who pushed him inside his apartment. Kendrick was ordered to strip to his underwear. Kendrick lay on his bed while the men demanded money and items from Kendrick. According to Kendrick, the men told

him that if he did not cooperate, they were going to shoot or kill him.

Kendrick testified at trial that he never saw a gun but that he saw the men make hand movements indicating that they might be concealing a gun. Nevertheless, Kendrick told the interviewing detective that one of the men had pointed a black semiautomatic handgun at him. A gun was never discovered by the police.

Kendrick testified that he saw Birth in his bedroom looking through drawers, going through his closet, and putting items in bags. Kendrick further testified that the other man was in the living room the majority of the time. A stereo was taken from Kendrick's bedroom. In addition, Birth demanded Kendrick's car keys. Birth ordered the other man to stand at the bedroom door and watch Kendrick while Birth left the bedroom. After telling Birth where the car keys were, Kendrick did not see Birth again. The man wiped down the doorknob and other objects in the apartment to remove fingerprints. The man told Kendrick not to call the police and left the apartment. Approximately 15 minutes later, Kendrick called the police. Kendrick discovered that a set of car keys was missing from his living room and that his car had been stolen.

In investigating Kendrick's report, Detective Dave Alexander thought it was strange that Williams had been at Kendrick's apartment but had not contacted the police. Alexander later discovered an incident report that occurred the day after the robbery involving Williams and two men, Robert Rayford and Birth. A fingerprint taken off of a box in Kendrick's closet matched that of Rayford. In addition, Kendrick's car was found approximately one block from an apartment complex where Birth had been staying. Alexander assembled two photo lineups, one containing Birth's picture and the other containing Rayford's picture. Nevertheless, Kendrick was unable to pick Birth out of the photo lineup. Rayford and Birth were arrested and interviewed separately by Alexander.

*Rayford's Statement*

Rayford told Alexander that Birth had gotten upset over a man who was calling Williams. Birth had planned to rob the man. Williams, Rayford, and Birth then went to Kendrick's apartment com-

plex. When they arrived, Williams went inside the apartment complex while Rayford and Birth waited in the parking lot. Rayford saw Williams and a man leave in a car. After they returned, Rayford and Birth walked to Kendrick's apartment. Birth knocked on the door. Rayford stated that Birth was holding something in his hand but that Rayford could not see what the object was. When a man opened the door, Birth immediately went through the doorway and told the man something. The man got down on the floor of his living room.

Rayford told Alexander that shortly after he and Birth went inside the apartment, Birth and Kendrick went into the bedroom. Rayford and Williams stayed in the living room. Williams took liquor from the apartment and left. Rayford stated that he took a stereo at Birth's direction and carried it down to the car. When Rayford returned to the apartment, Birth ordered him to watch Kendrick and not let him leave. Birth proceeded to look for Kendrick's car keys. After Birth found Kendrick's car keys, Birth left the apartment. Rayford said that he left the apartment 5 to 10 minutes later.

*Birth's Statement*

During his interview, Birth initially denied ever meeting Kendrick or talking to him on the phone. Moreover, Birth denied ever being at Kendrick's apartment complex. Later in the interview, however, Birth said that he and Rayford had gone with Williams to Kendrick's apartment complex so that Williams could get money from Kendrick. Birth stated that he and Rayford had gone with Williams as protection and had waited in the parking lot. Alexander told Birth that the police had found Birth's and Rayford's fingerprints in Kendrick's apartment and Birth's fingerprints in Kendrick's car. Moreover, Alexander told Birth that video surveillance from the apartment complex parking lot showed Birth and Rayford walking towards the apartment complex. Those statements by Alexander were not true. Birth told Alexander that he and Rayford had walked on opposite sides of the apartment building and that Rayford might have gone inside the apartment.

After Alexander took a break in the interview, Birth changed his story and stated that he had previously talked to Kendrick on the phone. Birth further stated that he had gone inside Kendrick's apartment to request that Kendrick stop text messaging Williams. Birth said that he never had any intent to steal from Kendrick. Birth told Alexander that he was in the bedroom speaking with Kendrick and did not know what Rayford was doing in the living room. Birth said that when they left the apartment, Rayford had a bag that he did not have when he entered the apartment. Moreover, Birth told Alexander that Rayford drove Kendrick's car when they left the apartment.

Birth was charged with aggravated robbery in violation of K.S.A. 21-3427 and aggravated burglary in violation of K.S.A. 21-3716. Birth moved to suppress his statements made during his interrogation. After holding an evidentiary hearing, the trial court found that Birth's statements were voluntary and denied Birth's motion to suppress.

*Birth's Testimony*

At trial, Birth testified that he actually met Kendrick on two occasions. Birth testified that previous to the incident in question, Williams had introduced them outside of Kendrick's apartment, and he had asked Kendrick to stop calling Williams. Nevertheless, Kendrick kept calling and text messaging Williams. Birth testified that when he went back to Kendrick's apartment on the date in question, he knocked on Kendrick's door in order to get Williams to accompany him to a bar. Birth testified that Kendrick let him and Rayford inside the apartment and told them that Williams was in the back room. Once inside Kendrick's apartment, Birth requested that Kendrick stop calling and text messaging Williams.

The jury convicted Birth of robbery, the lesser included offense of aggravated robbery, and aggravated burglary. Birth was sentenced to 57 months in prison.

*I.  Did the admission of hearsay statements violate the Confrontation Clause?*

First, Birth contends that the admission of the hearsay statements of Rayford, who was not called as a witness by the State and

thus was not available for cross-examination at trial, violated Birth's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. An appellate court's "standard of review of a claimed violation of the Confrontation Clause of the United States Constitution because of the 'unavailability' of a witness is a question of law, which [an appellate court] review[s] de novo. [Citation omitted.]" *State v. Saleem*, 267 Kan. 100, 107, 977 P.2d 921 (1999).

At trial, over Birth's objection, the trial court allowed the State to question Alexander about Rayford's statements during his interview on the basis that Birth had "opened the door" to such testimony on cross-examination. The trial court limited the State's redirect examination to the scope of the questions asked by Birth on cross-examination. During redirect examination, the State elicited testimony from Alexander about Rayford's statements implicating Birth in planning and executing the robbery at Kendrick's apartment. Although the State had earlier endorsed Rayford as a witness, Rayford never testified at trial.

Citing *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), Birth maintains that the admission of Rayford's testimonial hearsay statements violated his rights under the Confrontation Clause. The Sixth Amendment to the United States Constitution states that in all criminal prosecutions, the accused shall enjoy the right to be confronted by the witnesses against him or her. *State v. Meeks*, 277 Kan. 609, 613, 88 P.3d 789 (2004). The United States Supreme Court in *Crawford* held that the Confrontation Clause bars witnesses' testimonial out-of-court statements that are offered to prove the truth of the matter asserted unless (1) the witnesses are unavailable and (2) the defendants had prior opportunity to cross-examine those witnesses. See *Meeks*, 277 Kan. at 614.

Nevertheless, the United States Supreme Court in *Crawford* continued to accept the rule of forfeiture by wrongdoing, which "extinguishes confrontation claims on essentially equitable grounds." 541 U.S. at 62. Citing *Reynolds v. United States*, 98 U.S. 145, 158, 25 L. Ed. 244 (1878), our Supreme Court in *Meeks*, 277 Kan. at 614-15, stated as follows:

" 'The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own [the accused's] wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.' "

Here, it is undisputed that Rayford's statements were testimonial as they were the product of a police interrogation. See *Crawford,* 541 U.S. at 68 (stating that testimonial evidence "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations"). Moreover, Rayford was never called as a witness at trial. Furthermore, there was never an argument made that the admission of Rayford's statements came within the rule of forfeiture by wrongdoing.

Nevertheless, the State maintains that the admission of Rayford's hearsay statements did not violate *Crawford* because Birth had the opportunity to confront Rayford. To support its argument, the State cites *State v. Corbett,* 281 Kan. 294, 303-04, 130 P.3d 1179 (2006), where our Supreme Court held that *Crawford* did not apply to the admission of two witnesses' deposition transcripts because the witnesses were available for cross-examination and testified at trial. Our Supreme Court considered K.S.A. 60-460, which states in relevant part:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay and inadmissible except:

"(a) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

Our Supreme Court stated that the language of K.S.A. 60-460(a), "which limits the application of the statute to 'a person who is present at the hearing and available for cross-examination,' specifically protects the defendant's right to confrontation by requiring

the person to be available for cross-examination at trial." 281 Kan. at 303-04. Our Supreme Court thus held that "the application of K.S.A. 60-460(a) negates the application of *Crawford.*" 281 Kan. at 304.

The holding in *Corbett* is inapplicable here because Rayford was never made available for cross-examination at trial. The State never called Rayford as a witness. In *State v. Fisher*, 222 Kan. 76, Syl. ¶ 5, 563 P.2d 1012 (1977), our Supreme Court held that a "declarant must testify at trial before hearsay evidence of his out-of-court statements may be admitted under K.S.A. 60-460(a)." Our Supreme Court later modified this rule in *State v. Davis*, 236 Kan. 538, 541, 694 P.2d 418 (1985), where it held that if a declarant is available and actually testifies at trial, hearsay evidence of his out-of-court statements can be admitted before or after the declarant testifies. Here, because Rayford was not called to testify as a witness at trial, hearsay evidence of his out-of-court statements was inadmissible under K.S.A. 60-460(a). See *State v. Wilson*, 35 Kan. App. 2d 333, 338, 130 P.3d 139 (2006) (holding that trial court erred in admitting hearsay statements under K.S.A. 60-460[a] when declarant was not called to testify at trial).

Nevertheless, the trial court did not admit Rayford's hearsay statements under K.S.A. 60-460(a). As discussed above, the trial court admitted the hearsay statements because Birth had "opened the door" to such testimony.

Arguing that the trial court erroneously admitted Rayford's hearsay statements, Birth cites *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004). In *Cromer*, the Sixth Circuit Court of Appeals held that the admission of testimonial hearsay evidence during the State's redirect examination violated the defendant's right to confrontation even though the defendant opened the door to such evidence during cross-examination. The Sixth Circuit Court of Appeals recognized that the trial court's admission of the hearsay testimony on the basis that the defendant had opened the door to such evidence might have been proper under modern evidence law. Nevertheless, the *Cromer* court recognized that *Crawford* demonstrated that "the Confrontation Clause, when properly applied, is not dependent upon 'the law of Evidence for the time

being.' " 389 F.3d at 678 (quoting *Crawford*, 124 S. Ct. at 1364, 1370). Thus, the relevant question was not whether the hearsay statements were properly admitted under the law of evidence. Rather, the question was whether the defendant's right to confrontation was violated by the witness' redirect testimony. Recognizing that a defendant forfeits his or her right to confrontation only when his or her own wrongful conduct causes his or her inability to confront the witnesses, the *Cromer* court stated:

"If there is one theme that emerges from *Crawford*, it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admission of hearsay statements. Thus, the mere fact that Cromer may have opened the door to the testimonial, out-of-court statement that violated his confrontation right is not sufficient to erase that violation. In this, too, we agree with Professor Friedman, who has postulated that a defendant only forfeits his confrontation right if his own wrongful conduct is responsible for his inability to confront the witness. Friedman, *Confrontation*, 86 Geo. L.J. 1031. If, for example, the witness is only unavailable to testify because the defendant has killed or intimidated her, then the defendant has forfeited his right to confront that witness. A foolish strategic decision does not rise to the level of such misconduct and so will not cause the defendant to forfeit his rights under the Confrontation Clause." 389 F.3d at 679.

*Cromer* leaves no doubt that ill-advised decisions by a defense counsel should not be the basis for a defendant forfeiting his or her fundamental right of confrontation. The *Cromer* court held that the hearsay testimonial statements elicited by the State during redirect examination violated the defendant's right to confront the witnesses against him. 389 F.3d at 679.

The major premise that underlies *Cromer* is as follows:

No defendant may forfeit his or her right of confrontation unless the defendant kills, intimidates, or procures the absence of the witness.

This major premise, however, conflicts with the "open the door" rule applied in this jurisdiction. Our Supreme Court has firmly followed the "open the door" rule:

"[W]hen a defendant opens an otherwise inadmissible area of evidence during the examination of witnesses, the prosecution may then present evidence in that formerly forbidden sphere. [Citations omitted.] By opening the door to otherwise

inadmissible hearsay, a defendant waives the Sixth Amendment right to confrontation." *State v. Johnson*, 258 Kan. 475, 481, 905 P.2d 94 (1995).

In *Johnson*, the defendant elicited hearsay testimony concerning a conversation with a declarant who was unavailable to testify. The defendant objected when the State attempted to elicit testimony about the same hearsay statements. The trial court determined that the defendant had opened the door to such testimony and allowed the evidence to be admitted. Our Supreme Court affirmed the trial court, holding that a defendant *waives* his or her right to confrontation by opening the door to otherwise inadmissible hearsay. 258 Kan. at 481.

Although *Johnson* was decided before *Crawford*, the language in *Johnson* is clear that a defendant *waives* his or her right to confrontation by opening the door to inadmissible hearsay.

Other jurisdictions that have decided cases after *Crawford* have applied a similar "open the door" rule in holding that there is no Confrontation Clause violation when the defendant has opened the door to the admission of the hearsay testimony. For instance, in *People v. Ko*, 789 N.Y.S.2d 43, 15 A.D.3d 173 (2005), the New York Supreme Court found no violation of the defendant's right to confrontation under *Crawford* by the admission of a testimonial hearsay statement when the defendant had opened the door to the admission of the statement. See also *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) (no Confrontation Clause violation under *Crawford* where defendant opened door to hearsay testimony); *Tinker v. State*, 932 So. 2d 168, 187-88 (Ala. Crim. App. 2005) (because defendant opened door to details of declarant's statement, defendant cannot now complain that State's introduction of entire statement violated Confrontation Clause and *Crawford*).

Recently, our Supreme Court in *State v. Fisher*, 283 Kan. 274, 154 P.3d 455 (2007), followed the "open the door" rule from *Johnson* in rejecting the defendant's argument that his right to confrontation had been denied under *Crawford* by the admission of hearsay testimony. By opening the door to the hearsay evidence, the defendant in *Fisher* had forfeited his right to confrontation and had waived any hearsay objections. Our Supreme Court found no error in the admission of the hearsay evidence. 283 Kan. at 311.

Similar to the defendant in *Fisher*, Birth opened the door to the hearsay evidence. Birth elicited testimony concerning Rayford's statements during cross-examination of Alexander but then objected when the State announced its intention to question Alexander about those hearsay statements. Under *Fisher*, Birth waived his right to confrontation under the Sixth Amendment Confrontation Clause when he opened the door to the hearsay testimony. This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.2d 1233, *rev. denied* 278 Kan. 847 (2004). Therefore, we determine that the trial court properly admitted Rayford's hearsay statements into evidence.

*II. Should false statements in the interrogation tape have been admitted into evidence?*

Next, Birth maintains that the trial court violated his constitutional right to due process when it allowed the State to present false material to the jury. Birth points out that on the interrogation tape that was played to the jury, Detective Alexander made the following false statements to Birth: (1) that Birth's fingerprints were found in Kendrick's apartment; (2) that Birth's fingerprints were found in the driver's side of Kendrick's car; (3) that Kendrick had stated that Birth had a gun; and (4) that Rayford had stated that Birth used a gun. Birth maintains that this false material should have been redacted from the interrogation tape before it was played to the jury.

In arguing that the false statements should not have been presented to the jury, Birth cites *State v. Elnicki*, 279 Kan. 47, 105 P.3d 1222 (2005). In *Elnicki*, however, defense counsel objected to the statements in the interrogation tape and moved to redact the statements before the interrogation tape was played to the jury. Here, Birth did not object to the false statements before the interrogation tape was played to the jury. Moreover, Birth fails to cite any place in the record where he asked for redaction of the statements from the interrogation tape.

Similarly, in *State v. Anthony*, 282 Kan. 201, 145 P.3d 1 (2006), the defendant attempted to rely on *Elnicki* in arguing that the videotape of his interrogation should have been redacted to remove the detective's repeated comments concerning the defendant's lack of credibility or veracity. Nevertheless, different from *Elnicki*, the videotape in *Anthony* was played for the jury at trial without objection. Our Supreme Court held that in the absence of an objection before the trial court, the evidentiary issue was not preserved for appeal. Our Supreme Court noted that an appellate court cannot assume that the playing of an unredacted interrogation videotape for the jury is something the defense wanted to avoid. Our Supreme Court stated that it did not regard an *Elnicki* issue as one that must be addressed to serve the ends of justice or prevent a denial of fundamental rights. 282 Kan. at 212-13. Instead, it adhered to the general rule "that a challenge to the admissibility of evidence will not be considered for the first time on appeal. [Citation omitted.]" 282 Kan. at 213-14.

Under *Anthony*, Birth did not preserve this issue for appeal because he failed to object to the admissibility of the false statements in the interrogation tape before the tape was played to the jury at trial. This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *Beck*, 32 Kan. App. 2d at 788. Following our Supreme Court precedent in *Anthony*, we decline to address Birth's argument on appeal.

## III. Was there prosecutorial misconduct?

Next, Birth contends that the prosecutor committed prosecutorial misconduct and denied Birth his right to a fair trial. A contemporaneous objection to alleged prosecutorial misconduct is not required in order to preserve the issue for appeal; an appellate court will apply the same standard of review regardless of whether the defendant lodged an objection. *State v. Swinney*, 280 Kan. 768, 779, 127 P.3d 261 (2006).

An appellate court's review of an allegation of prosecutorial misconduct requires a two-step analysis. First, the appellate court decides whether the comments were outside the wide latitude that

the prosecutor is allowed when discussing the evidence. Second, the appellate court decides whether those comments constitute plain error, that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *Elnicki,* 279 Kan. at 58.

*A. Were the comments outside the wide latitude allowed the prosecutor?*

*1. Comments on Birth's Credibility and Bolstering the Credibility of State's Witnesses*

Birth argues that the prosecutor, during closing arguments, improperly expressed his personal opinion and vouched for the credibility of Kendrick's and Rayford's statements. Moreover, Birth contends that the prosecutor improperly commented that Birth fabricated his story.

The Kansas Rules of Professional Conduct and the American Bar Association Standards of Criminal Justice indicate that it is improper for an attorney to vouch for the credibility of a witness. See *State v. Pabst,* 268 Kan. 501, 996 P.2d 321 (2000). " 'The Kansas Rules of Professional Conduct (KRPC) unequivocally state that an attorney shall not state a personal opinion as to the credibility of a witness or as to the guilt or innocence of the accused. KRPC 3.4 ([2002] Kan. Ct. R. Annot. [416]) (fairness to opposing party and counsel).' [Citation omitted.]" *State v. Hankerson,* 34 Kan. App. 2d 629, 636, 122 P.3d 408, *rev. denied* 281 Kan. 1380 (2006). "The point of not allowing a prosecutor to comment on the credibility of a witness *is that expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony,* not *commentary on the evidence of the case." Pabst,* 268 Kan. at 510.

In discussing the consistencies in Kendrick's and Rayford's statements, the prosecutor stated: "So you can use those two statements [of Kendrick and Rayford] and put them together and *have a certainty in what the truth is here."* (Emphasis added.)

Birth contends that the prosecutor later commented that Birth had lied about what had happened when he stated:

"I'm sure that there are lots of facts that you heard and picked up on that I haven't touched upon that will lend you towards arriving at your verdict. I would just ask

you when this case is done, when you go through all the evidence to look at what is credible. There's a great song by Bob Dylan and it says you don't have to be a weather man to know which way the wind blows. And that's really what this case is about."

Birth maintains that in the rebuttal portion of closing argument, the prosecutor inserted his opinion that Birth fabricated his story and that the State's witnesses were telling the truth by stating: "Kendrick[']s and Rayford's statement fits together with all the other evidence in the case. The defendant's statements out there swirling in the wind."

The State contends that the prosecutor's statements were not improper because the prosecutor was summarizing the evidence and arguing reasonable inferences from the evidence. A prosecutor is given wide latitude in the language, manner, and presentation of closing argument, as long as the argument is consistent with the evidence. *State v. Mann*, 274 Kan. 670, 688, 56 P.3d 212 (2002). A prosecutor may make fair comments on the evidence, provided the comments are confined to the evidence and reasonable inferences to be drawn therefrom. *State v. Graham*, 247 Kan. 388, 397, 799 P.2d 1003 (1990).

The prosecutor's comments outlined above occurred in the context of discussing the consistencies between Rayford's and Kendrick's statements and the other evidence in the case and the inconsistency of Birth's statement with this evidence. Nevertheless, the prosecutor went outside permissible comment on the evidence when he told the jury that it could put together Kendrick's and Rayford's statements "and have a certainty in what the truth is here." In *Elnicki*, 279 Kan. at 64, our Supreme Court determined that the prosecutor's comment, "You know she was telling you the truth," in referring to the victim's testimony was in error but noted that the comment was "not necessarily prejudicial." Similarly, in this case, the prosecutor's comment on the credibility of the State's evidence was in error.

In addition, the prosecutor's rendition of an analogy based upon the lyrics of a Bob Dylan song—"you don't have to be a weather man to know which way the wind blows"—was an improper inference drawn from the evidence. The prosecutor argued that those

song lyrics were "what this case is about." Moreover, the prosecutor compared Birth's testimony to statements "swirling in the wind." A prosecutor may argue omissions and inconsistencies in evidence which affect the credibility of witnesses. Nevertheless, the evidence in the present case does not support an inference that Birth's credibility regarding his testimony was no more trustworthy than statements "swirling in the wind." Neither Rayford nor Kendrick was a perfect witness. As a result, the prosecutor's analogy and comments were outside the wide latitude that a prosecutor is allowed in closing argument.

## 2. *Shifting of Burden of Proof*

Birth also contends that the prosecutor improperly shifted the burden of proof when he made the following italicized statements in the rebuttal portion of closing argument:

"And I think when you listen to the tape and you hear the defendant's story, listen to how he phrases things. He'll say well, did you have permission to enter? Well, he was scared and he—and he backed up, so he never told us no. *Or on the stand I asked him did you take the cell phone. And he says do you have proof I took the cell phone? I mean, he's cutting fine lines, you know.*

"He never told me no, I couldn't come in. *You can't prove I have the cell phone.* So just listen to his tone and also listen to how he gets upset when he starts talking about confronting this guy. You know, he's cool all the way through the interview until he starts talking about the confrontation and then he starts using cuss words and what not." (Emphasis added.)

To support his argument on this issue, Birth cites *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004). In *Tosh*, our Supreme Court determined that the prosecutor's comments, "Is there any evidence that it didn't happen? Is there any evidence that the things she told you didn't happen?" were improper attempts to shift the burden of proof to the defendant. 278 Kan. at 92. In the instant case, however, the prosecutor's comments were not like those in *Tosh*. The prosecutor never asked the jury to look at the lack of evidence brought forward by the defense. Rather, the prosecutor's allegedly improper statements were made when he was commenting on how Birth had changed his story many times since he had been arrested and how Birth had responded to questions about the robbery dur-

ing the interview and at trial. The prosecutor's comments were not an attempt to shift the burden of proof to Birth.

Moreover, the jury was correctly instructed that the State had the burden of proof. During closing argument, defense counsel reminded the jury that the State had the burden of proof. "When a jury has been properly instructed that the State bears the burden of proof, a prosecutor may argue inferences based on the balance or lack of evidence, provided the remarks do not indirectly command an adverse inference regarding the defendant's failure to testify. [Citation omitted.]" *Swinney*, 280 Kan. at 781. Here, the prosecutor's statements could not have been interpreted as a comment on the defendant's failure to testify because Birth actually testified at trial. The prosecutor's comments were within the wide latitude that a prosecutor is allowed when discussing the evidence.

*B. Did the prosecutor's statements constitute plain error?*

Because some of the prosecutor's comments were improper, the second step in the analysis for prosecutorial misconduct must be examined. In the second step of the two-step analysis, the appellate court considers three factors:

"(1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence is of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. None of these three factors is individually controlling. Moreover, the third factor may not override the first two factors, unless the harmless error tests of both K.S.A. 60-261 [refusal to grant new trial is inconsistent with substantial justice] and *Chapman* [*v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial)] have been met. [Citations omitted.]" *Swinney*, 280 Kan. at 780.

Here, a reading of the entire closing argument fails to suggest that the prosecutor's comments were gross and flagrant or that they were evidenced by ill will. In fact, the prosecutor reminded the jurors several times during closing arguments that it was their job to weigh the credibility of the evidence. Finally, the prosecutor's comments would likely have had little weight in the minds of jurors due to the direct and overwhelming nature of the evidence in this case. The victim of the crime testified at trial and identified Birth

as the person who had pushed him back into his apartment, told him that it was a robbery, and took items from his apartment. Moreover, the coconspirator in the case independently corroborated many details of the victim's story. Because there was direct and overwhelming evidence of Birth's guilt in the crimes, the prosecutor's comments were harmless error. Birth was not denied a fair trial due to the prosecutor's statements in closing argument.

*Introduction of False Statements in Interrogation Tape*

Next, Birth argues that the prosecutor improperly introduced false material in the interrogation tape. As discussed above, under *State v. Anthony*, 282 Kan. 201, 145 P.3d 1 (2006), Birth's failure to object to the false statements in the interrogation tape and to request redaction of the statements precludes this court from addressing Birth's earlier argument that the trial court should not have admitted the evidence. Birth, however, now couches his argument as a prosecutorial misconduct issue. Prosecutorial misconduct to which there was no objection at trial may nonetheless be reviewed on appeal where the prosecutor's misconduct is so prejudicial or constitutes a constitutional violation which, if not corrected, will result in injustice or a miscarriage of justice. *State v. Puckett*, 230 Kan. 596, Syl. ¶ 1, 640 P.2d 1198 (1982). If a claimed error implicates a defendant's right to a fair trial, the appellate standard of review is the same regardless of whether the issue of prosecutorial misconduct is preserved by an objection at trial. *State v. Doyle*, 272 Kan. 1157, 1164, 38 P.3d 650 (2002).

Although most reported cases involving prosecutorial misconduct involve a prosecutor's statements during closing arguments, our Supreme Court has recognized that prosecutorial misconduct can occur when the prosecutor elicits inadmissible testimony at trial. See *Tosh*, 278 Kan. at 94.

Here, however, the prosecutor did not elicit inadmissible testimony. Rather, the prosecutor presented an admissible audiotape of Birth's interrogation that included several false statements by Alexander. Upon presenting the tape, the prosecutor made clear through testimony he elicited from Alexander that certain statements on the tape were false. Alexander testified that the police

never found Birth's fingerprints at Kendrick's apartment or in Kendrick's car and that the police never discovered a bullet in Birth's car. Moreover, after Birth opened the door to Rayford's statements, the State elicited testimony from Alexander indicating that Rayford had not seen Birth with a gun at Kendrick's apartment. Rather, Rayford had stated that Birth was holding something in his hand when he entered Kendrick's apartment but that Rayford could not see what the object was. By eliciting such testimony, the prosecutor ensured that the jury would not be misled by Alexander's false statements. The prosecutor's conduct of introducing the interrogation tape with Alexander's statements was not improper. Moreover, assuming *arguendo* that the prosecutor should not have presented the false statements in the interrogation tape, the prosecutor's action was not gross and flagrant, did not show ill will, and was harmless error. As a result, there was no prosecutorial misconduct.

*Failure to Call Rayford as a Witness*

Further, Birth contends that the prosecutor committed misconduct by not calling Rayford as a witness and denying Birth his right to confrontation under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Nevertheless, the prosecutor did nothing improper by eliciting Rayford's statements from Alexander because Birth had opened the door to such testimony. The prosecutor was following the "open the door" evidentiary rule that has been firmly established in Kansas. Moreover, the prosecutor could not have denied Birth his right to confrontation by failing to call Rayford as a witness as Birth had waived his rights under the Confrontation Clause by opening the door to Rayford's hearsay testimony. See *Johnson*, 258 Kan. at 481.

*IV. Should the interrogation tape have been suppressed?*

Next, Birth contends that the trial court should have granted his motion to suppress his interrogation statements. Because the evidence presented at the hearing on the motion to suppress was essentially undisputed, this court has unlimited review over the trial court's decision. When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question

of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

### A. Did Birth invoke his right to remain silent?

Birth asserts that Alexander failed to honor his *Miranda* rights when Alexander continued questioning him after Birth expressed his decision to remain silent.

Here, Birth points to two statements during his interrogation where he invoked his right to remain silent. The first statement occurred after Alexander falsely stated that a bullet had been found in Birth's car. Birth denied that the bullet could have been found in his car and said, "Let's leave it at that." The next statement occurred when Alexander falsely told Birth that Birth's fingerprints had been found inside Kendrick's apartment and inside the car. After hearing this information, Birth stated: "I'm not an imbecile, you don't need this interview."

"When a suspect makes a statement which might be ambiguous as to whether the suspect is asserting a right to remain silent or to confer with counsel, the interrogator may ask questions to clarify, but the interrogator is not required to clarify and may continue the questioning. [Citation omitted.]" *State v. Holmes*, 278 Kan. 603, 618, 102 P.3d 406 (2004). Birth's statements were not an unequivocal invocation of his right to remain silent. Birth's statement "[l]et's leave it at that" could have been interpreted to mean that he had said all he was going to say about the bullet allegedly found in his car. Moreover, his statement, "I'm not an imbecile. You don't need this interview," could have been interpreted to mean that the police would not need his interview if they really did have his fingerprints connecting him to the crime.

In *State v. McCorkendale*, 267 Kan. 263, 273, 979 P.2d 1239 (1999), our Supreme Court held that the defendant's statement, " 'So that's all I [got] to say,' " was not an unequivocal invocation of his right to remain silent and could have been interpreted as a statement that he had finished his explanation of the matter. Determining that the defendant's statement was ambiguous at best, our Supreme Court held that the trial court did not err in failing

to suppress the defendant's statements following his purported invocation. 267 Kan. at 273.

Similarly, in this case, Birth's statements were ambiguous at best. Alexander was not required to clarify Birth's statements and could properly continue the questioning. The trial court did not err in denying Birth's motion to suppress his statements on the basis that Birth had invoked his right to remain silent.

*B. Were Birth's statements involuntary under the totality of the circumstances?*

Next, Birth contends that his interrogation statements were involuntary due to the following factors: the failure of Alexander to re-*Mirandize* him after a break; the fact that he was handcuffed to a table during the break; and the deceptive police practice of Alexander falsely telling him that his fingerprints were found in Kendrick's apartment and car and that a bullet had been found in Birth's car.

In determining whether a statement is voluntary, a court looks at the totality of the circumstances. See *State v. Esquivel-Hernandez*, 266 Kan. 821, 825, 975 P.2d 254 (1999). Factors include the duration and manner of the interrogation; the accused's ability on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry is whether the statement was the product of the accused's free and independent will. *State v. Swanigan*, 279 Kan. 18, 23-24, 106 P.3d 39 (2005).

At the suppression hearing, Alexander testified that he began his interview with Birth on October 28, 2004, at 7:49 p.m. in an interview room. Birth had been arrested and was in custody at the time of the interview. Birth's left hand was handcuffed to the table in the interview room. As Alexander was going over the personal history form, Birth answered all the questions appropriately. Birth stated that he was not under the influence of alcohol and had not consumed any drugs.

*Miranda Warnings*

Before questioning Birth about the alleged crime, Alexander administered *Miranda* rights. Birth waived his *Miranda* rights at ap-

proximately 8:05 p.m. Alexander then proceeded with the taped portion of the interview. At the beginning of the audiotape, Birth acknowledged that he had received his *Miranda* rights and had agreed to speak with Alexander.

When questioning Birth about the alleged crime, Alexander stated that the police had discovered fingerprints of Birth and Rayford in Kendrick's apartment, fingerprints of Birth in Kendrick's car, and a bullet in Birth's car. Approximately 53 minutes after the tape was started, Alexander took a break in the interview. During the break, Birth was allowed to use the restroom and was then returned to the interview room where his hand was again handcuffed to the table. Alexander resumed the interview after an hour and 5 minute break. Alexander did not readminister *Miranda* warnings after the break. Alexander testified that Birth never indicated that he wanted to end the interview.

Regarding Alexander's failure to re-*Mirandize* Birth after the break, only 2 hours had elapsed between the time that Birth was given *Miranda* warnings and the time that Alexander resumed the interview after the break. Our Supreme Court in *State v. Nguyen*, 281 Kan. 702, 133 P.3d 1259 (2006), recently held that a waiver of *Miranda* rights does not expire through the mere passage of 5 to 8 hours when a suspect has continuously been in custody. Birth makes no argument that the *Miranda* warnings given at the start of his interview were improperly administered. Birth's waiver of his *Miranda* rights at the start of the interview continued its efficacy. See *Nguyen*, 281 Kan. at 724.

*Use of Restraints*

Regarding the fact that Birth was handcuffed to the interview table, Alexander testified that all inmates were handcuffed to the table. Only one of Birth's hands was handcuffed to the table, and Birth was allowed to get out of the handcuff and use the restroom during the break. In *State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992), the defendant was handcuffed the entire time during an 8-hour interview. Our Supreme Court upheld the trial court's determination that the defendant's confession was voluntary. Our Supreme Court noted that there were ample security reasons for the

defendant to remain in handcuffs, that the interrogation was not continuous because there were meal and restroom breaks, and that there was no evidence that the defendant requested termination of the interview. 251 Kan. at 919-20.

*Police Deception*

Although in his brief Birth focuses on the police deception used by Alexander during the interrogation, the State argues that Birth failed to raise a "police deception" argument before the trial court. At oral arguments, Birth's appellate counsel conceded that Birth had not presented this argument to the trial court. Birth cannot prevail by raising on appeal reasons for suppressing evidence that were not presented to the trial court. See *State v. Mack*, 255 Kan. 21, 27-28, 871 P.2d 1265 (1994) (determining that defendant could not prevail by presenting on appeal reasons for suppressing identification that were never presented to trial court); see also *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006) (defendant precluded from raising on appeal points not presented to trial court).

Nevertheless, assuming *arguendo* that Birth had properly presented his "police deception" argument to the trial court, he would not have prevailed on this issue based on the totality of the circumstances. In *Swanigan*, 279 Kan. 18, our Supreme Court held that an officer's misrepresentation during the interrogation of a suspect concerning evidence implicating the suspect does not by itself make the suspect's confession involuntary. Rather, such misrepresentation must be considered in conjunction with other circumstances to determine whether the confession was voluntary based on the totality of the circumstances. 279 Kan. 18, Syl. ¶ 3.

In summary, the evidence at the suppression hearing showed that Birth was not under the influence of alcohol or drugs during the interview and that Birth understood his *Miranda* rights. Nevertheless, he chose to waive those rights and speak with Alexander. Birth makes no argument that the interview itself was unduly long. Alexander took a break after less than an hour of questioning and allowed Birth to use the restroom. Birth never requested that Alexander end the interview. We determine that Birth's interrogation statements were the product of his free and independent will. We

agree with the trial court that Birth's statements were voluntary. Therefore, we find no error in the trial court's denial of Birth's motion to suppress.

*V. Was there sufficient evidence of aggravated burglary?*

Next, Birth contends that there was insufficient evidence to support his conviction for aggravated burglary because the State failed to prove beyond a reasonable doubt that Birth entered Kendrick's apartment without authority. When a defendant challenges the sufficiency of the evidence, an appellate court is required to determine whether, after review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

In order for the jury to find Birth guilty of aggravated burglary, one of the elements that the State needed to prove beyond a reasonable doubt was that Birth entered Kendrick's apartment without authority. K.S.A. 21-3716; PIK Crim. 3d 59.18. Birth attempts to attack the sufficiency of the evidence to support aggravated burglary by arguing that "this case boiled down to a credibility contest as to whether [Birth] did enter the apartment without authority." Birth then proceeds to attack Kendrick's credibility by pointing out the inconsistencies in Kendrick's statements, the fact that Kendrick could not identify Birth in the photo lineup, and the fact that no gun was ever found in this case. Birth is essentially asking this court to reweigh the evidence and determine the credibility of witnesses. Nevertheless, "[t]he jury is charged with the responsibility of weighing the evidence and determining witness credibility. Appellate courts do not reweigh the evidence or decide which witnesses are credible." *State v. Corbett*, 281 Kan. 294, 310, 130 P.3d 1179 (2006). As an appellate court, we do not determine Kendrick's credibility or reweigh his testimony. This court's inquiry is limited to whether there was sufficient evidence to support Birth's conviction for aggravated burglary.

Although Birth testified at trial that Kendrick had willingly let him and Rayford into the apartment, Kendrick testified to the contrary. Kendrick testified that when he answered the door, he did

not invite the two men into his apartment. Rather, Kendrick testified that he was pushed back into the apartment by Birth, that the two men entered his apartment, and that he was forced to do what the men said. Kendrick's testimony was supported by Rayford's statements to Alexander. Rayford stated that after the man opened the door, Birth immediately went through the doorway. Rayford further stated that Birth then said something to the man and that the man got down on the floor. According to Rayford, Birth had made plans earlier in the evening to rob Kendrick.

All of this evidence, when taken in the light most favorable to the prosecution, was more than sufficient to show that Birth entered Kendrick's apartment without authority. As a result, Birth's argument that there was insufficient evidence to convict him of aggravated burglary lacks merit.

## VI. *Was there cumulative error?*

Next, Birth argues that cumulative trial error substantially prejudiced him and denied him a fair trial. "Multiple trial errors may require reversal of a defendant's conviction if the cumulative effect of the errors substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found if the evidence against the defendant was overwhelming." *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 34, 133 P.3d 48 (2006). Because Birth has failed to establish any trial errors, his cumulative error argument fails.

## VII. *Was the trial court required to consider Birth's financial circumstances before assessing BIDS fees?*

Next, Birth contends that the trial court erred in failing to consider his financial circumstances when ordering him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees. Birth's argument on appeal concerns the reimbursement of attorney fees under K.S.A. 2006 Supp. 22-4513 and does not extend to the application fee under K.S.A. 2006 Supp. 22-4529.

In the recent case of *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006), our Supreme Court held: "A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record

at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose."

This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). Here, the trial court never considered on the record at the time of assessing the BIDS fees the financial resources of Birth and the nature of the burden that payment of the fees would impose. Under *Robinson*, this case should be remanded for resentencing with directions for the trial court to comply with K.S.A. 2006 Supp. 22-4513 regarding the assessment of BIDS fees.

*VIII. Did the trial court err in including Birth's prior convictions in his criminal history?*

Finally, Birth argues that the trial court erred in including prior convictions in his criminal history without submitting the prior convictions to a jury for proof beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Birth concedes that our Supreme Court has rejected this argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). In *Ivory*, our Supreme Court held that *Apprendi* does not apply where a defendant's sentence was based in part upon the defendant's criminal history score under the Kansas Sentencing Guidelines Act. 273 Kan. 44, Syl. This court is duty bound to follow our Supreme Court precedent, absent some indication the court is departing from its previous position. *Beck*, 32 Kan. App. 2d at 788. Because there is no indication that our Supreme Court is departing from its position in *Ivory*, Birth's argument fails.

Affirmed in part, reversed in part on the BIDS issue, and remanded to the trial court to comply with *Robinson*.