No. 92,541

STATE OF KANSAS, *Appellee*, v. MIKKEL D. PARKER, *Appellant.*

147 P.3d 115

Opinion filed December 8, 2006.

*Will B. Wohlford*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Ryan M. Peck*, of the same firm, was on the brief for the appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Charles L. Rutter*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Mikkel Parker seeks this court's review of the Court of Appeals opinion affirming his conviction for possession of cocaine. Parker claims that the Court of Appeals and the trial court should have excluded evidence because it was seized while he was unlawfully detained. Parker further claims that without the unlawfully seized evidence, there is insufficient evidence to support his conviction.

## FACTS

Officer Bachmann received information from another Wichita police officer that some guys were hanging out in a garage at an apartment complex. Although there were no reports of criminal activity in the area, Officer Bachmann was curious about what the men were doing, so he decided to drive by in his marked patrol car and check on their activities. When he arrived at the apartment complex, he observed three black males sitting on chairs in a garage. Officer Bachmann, who had worked in that part of Wichita for approximately 23 years, did not recognize any of the individuals and did not see any indication of gang affiliation. Nevertheless, he decided to take a closer look and determine if the individuals lived in the nearby apartments.

Officer Bachmann pulled into the long driveway leading to the garage, eventually parking his car behind two other cars in the

driveway. As Officer Bachmann approached the garage in his patrol car, he observed one of the men, who was later identified as DeMarco Hoover, stand up and stuff something in his pocket. Hoover then bent over and began picking money up from the concrete floor. A second, unidentified man got up and walked to a nearby apartment.

Hoover and the third man, who was later identified as Mikkel Parker, approached the driver's side of Officer Bachmann's patrol car. Before Officer Bachmann exited from the car, he asked Hoover and Parker what was going on and whether they lived at the apartment complex. Hoover nodded affirmatively, indicating that he lived there. Officer Bachmann noticed that Parker had his right hand concealed and was concerned that Parker had a weapon. Officer Bachmann quickly exited his patrol car and asked Hoover's name because he was closer to Bachmann. After Hoover identified himself as DeMarco Hoover, Officer Bachmann asked both men to lift their shirts and turn around, so he could determine if they were armed. Both men complied, demonstrating that they were not armed. Parker then falsely identified himself as Quincy Galbreath. Officer Bachmann first directed his attention toward Hoover, asking whether he had anything illegal. Hoover admitted that he had a blunt, a marijuana cigar or large marijuana cigarette. At that point, Officer Goodman arrived. Officer Goodman searched Hoover and found a bag of marijuana. Officer Goodman then took Hoover into custody while Parker stood by and watched.

After Hoover was arrested, Officer Lane arrived. Officer Bachmann asked Officer Lane to stand with Parker while he went into the garage to investigate. Inside the garage, Officer Bachmann found a game table, dice, and a handgun. While in the garage, Officer Bachmann used his radio to check for outstanding warrants on either Hoover or Galbreath, the false identity used by Parker.

While he was standing with Officer Lane, Parker acted nervous, fidgeting and putting his hands in his pockets despite Officer Lane's request for Parker to keep his hands out of his pockets. Parker asked Officer Lane for permission to speak with Officer Bachmann. After Officer Lane granted Parker's request, Parker asked Officer Bachmann if he could leave. Officer Bachmann de-

nied Parker's request to leave because he had been advised of a possible warrant for Galbreath.

At that point, Officer Bachmann asked Parker if he had "anything on him." Parker said no, and Officer Bachmann asked if he could check Parker for contraband or drugs. Parker said yes and pulled a large wad of cash from his left pocket. Parker then put his right hand in his right pocket and brought his hand out with a clenched fist. Officer Lane observed a plastic baggie in Parker's fist and announced that Parker had a plastic baggie or dope.

Parker immediately started running, the officers pursued, and they were quickly able to tackle him. As Parker hit the ground, he threw the plastic baggie into the grass. The officers subdued Parker, then arrested him. Officer Bachmann retrieved the plastic baggie, which contained white rocks consistent with crack cocaine. The crime lab later confirmed the substance to be cocaine.

Officer Bachmann discovered Parker's true identity when he found a parole card in Parker's pocket. Parker was charged with possession of cocaine. He filed a motion to suppress all of the tangible evidence. After Parker waived his right to a jury trial, the district court combined the hearing on Parker's motion to suppress with his bench trial. The district court denied Parker's motion to suppress and found him guilty of possessing cocaine. Parker appealed, and the majority of the Court of Appeals affirmed the district court. *State v. Parker*, No. 92,541, unpublished opinion filed December 9, 2005, slip op. at 7. Judge Caplinger dissented, concluding that the district court should have suppressed the evidence. *Parker*, slip op. at D-7. Relying on Judge Caplinger's dissent, Parker petitioned this court to review the Court of Appeals decision. This court granted Parker's petition for review.

## ANALYSIS

Parker claims that he was unlawfully detained when officers observed cocaine in his possession and seized it. Parker asserts that the cocaine must be suppressed as the fruit of the poisonous tree because there was no reasonable suspicion to support his detention.

An appellate court reviews a defendant's request to suppress evidence using a bifurcated standard. The factual underpinnings are reviewed to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion drawn from those facts is reviewed as a question of law using a de novo standard. *State v. Hill*, 281 Kan. 136, 140, 130 P.3d 1 (2006).

Although the ultimate question is whether the district court should have suppressed the evidence, the first step in the analysis is to determine the nature of the encounter between Parker and the police officers.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights assure each person's right to be secure in his or her person and property against unreasonable searches and seizures. As a result of this protection, the law has developed four types of encounters between law enforcement officers and citizens. The first type of encounter is consensual and is not considered a seizure under the constitutional prohibitions. *Hill*, 281 Kan. at 141. The second type of encounter is an investigatory detention or *Terry* stop. *Hill*, 281 Kan. at 141; see *Terry v. Ohio*, 392 U.S. 1, 18, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). During an investigatory detention, a law enforcement officer may "stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime." K.S.A. 22-2402(1). The officer may demand the person's name and address and an explanation of the person's actions. K.S.A. 22-2402(1). The officer may also frisk the person for weapons if necessary for the officer's personal safety. K.S.A. 22-2402(2). The third type of encounter is a public safety stop, which allows a law enforcement officer to approach an individual to check on his or her welfare. For this type of encounter, the officer must be able to articulate specific facts that indicate a concern for public safety. *Hill*, 281 Kan. at 141. The fourth type of encounter is an arrest. To arrest an individual, a law enforcement officer must have a warrant, probable cause to believe there is a warrant for the person's arrest, or probable cause to believe that the person is committing or has committed a crime. K.S.A. 22-2401.

The nature of the encounter in this case turns on the distinction between consensual encounters and investigatory detentions. Parker argues that the encounter began as an investigatory detention because Officer Bachmann prevented him from leaving by blocking Parker's car in the driveway. The State, on the other hand, argues that the encounter was consensual until Officer Bachmann received information that there was a warrant for Galbreath, the false name Parker had given. At that point, the State asserts that the encounter became an investigatory detention supported by reasonable suspicion. The State points to the fact that Hoover and Parker approached Officer Bachmann's car rather than waiting for Officer Bachmann to approach them.

Consensual encounters are distinguished from investigatory detentions by determining whether a reasonable person would feel free " ' " 'to disregard the police and go about his business.' " ' " *State v. Morris*, 276 Kan. 11, 19, 72 P.3d 570 (2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 111 S. Ct. 2382 [1991]). In *Morris,* this court concluded that the encounter was not consensual when law enforcement officers parked behind the defendant's truck in a secluded location, activated the emergency lights, and illuminated the back of the truck with spotlights. The *Morris* court held that activating the lights was a show of authority, communicating an intent to restrict the defendant's freedom of movement. 276 Kan. at 20. In *State v. Epperson*, 237 Kan. 707, 714, 703 P.2d 761 (1985), this court concluded that the encounter was not consensual when a police officer parked his car in such a manner as to prevent the defendant's car from driving away and called out to the defendant as he was walking away from the car.

However, in *State v. Reason*, 263 Kan. 405, 412, 951 P.2d 538 (1997), this court concluded that the initial encounter was consensual when police parked behind an occupied vehicle that they had observed in a public parking lot. The *Reason* court stated that the defendant had invited the encounter because both of his car doors were open and the two occupants of the car were either asleep or unconscious. The *Reason* court specifically noted that the officers left room for the vehicle to leave the parking lot by pulling forward.

Because the encounter involved more than asking questions and requesting identification, the *Reason* court held that the consensual encounter became an investigatory detention when the officer requested a warrant check. Nevertheless, the *Reason* court concluded that the investigatory detention was supported by reasonable suspicion because the defendant could not produce any paperwork to establish his ownership of the car. 263 Kan. at 412-13.

In this case, the district court concluded that the initial encounter between Parker and Officer Bachmann was consensual. The district court reasoned that the encounter did not become an investigatory detention until Officer Bachmann received information regarding a possible warrant for Galbreath. Because Officer Bachmann had the right to investigate further to determine if there was a warrant for Galbreath, the district court decided that there was reasonable suspicion to support Parker's detention.

Our first step in reviewing the district court's decision is to determine whether the district court's factual findings are supported by substantial competent evidence. See *Hill*, 281 Kan. at 140. The district court made the following findings:

"At that time he did observe three black males seated or standing in the area of that garage. He felt that was suspicious. He pulled in. Immediately one of the individuals proceeded to leave the area. The other two individuals remained there when he pulled in. Those people approached his vehicle.

"At that point in time, he got out of his vehicle, and he contacted these people. There were two people and one officer at that time. He ascertained the names of the two people. This defendant gave him the name of Galbreath.

"From the evidence, the officer checked with SPIDER and found out there were warrants for both these individuals, Mr. Hoover and Mr. Galbreath. He then began putting his attention toward the individual, Hoover. Found information from him, Hoover indicated he had a blunt, and he subsequently was able to also find some marijuana which Hoover gave to him. Other officers arrived on the scene and Office Lane arrived.

"The evidence the Court finds is that the fact to be based on is that the officer was asked at some point in time after being given the name of Galbreath by this defendant if he could leave and he was told no, to hold on. The officer had been advised by SPIDER there was, in fact, a possible warrant for an individual named Galbreath.

"So the officer had the right at that point in time to keep the individual there to do further investigation."

The majority of the Court of Appeals determined that there was sufficient competent evidence to support the district court's findings and agreed with the district court's conclusion that the encounter between Parker and the police officers was voluntary until the officers were notified that there was a warrant for Galbreath. *Parker*, slip op. at 5-6. Relying on the possibility of an outstanding warrant, Parker's nervousness and refusal to keep his hands out of his pockets, and the discovery of drugs on Hoover, the majority of the Court of Appeals concluded that the officers had reasonable suspicion to detain Parker at that point. *Parker*, slip op. at 6.

However, Judge Caplinger dissented from the majority opinion, stating that the majority had disregarded essential, undisputed facts. *Parker*, slip op. at D-2. Judge Caplinger pointed out that Officer Bachmann blocked Parker's car in the driveway and asked Parker and Hoover to lift their shirts, so he could check them for weapons. *Parker*, slip op. at 9-10. Based on this evidence, Judge Caplinger concluded that the encounter between Parker and Officer Bachmann was not consensual from the outset and became an investigatory detention as soon as Officer Bachmann asked to check Parker and Hoover for weapons. *Parker*, slip op. at D-2 to D-4. Judge Caplinger concluded that Officer Bachmann did not have a reasonable suspicion for detaining Hoover and Parker because he was not aware of any illegal activity, did not observe any illegal activity, and was only driving by the garage to determine who was hanging out there and whether they lived there. *Parker*, slip op. at D-5 to D-6. As a result, Judge Caplinger would have suppressed the evidence. *Parker*, slip op. at D-7.

We have thoroughly reviewed the record and conclude that the district court's factual findings regarding the sequence of events are not supported by substantial competent evidence. The district court found that Officer Bachmann checked for warrants before he asked Hoover if he had anything illegal. However, our review of the record indicates that Hoover was arrested before Officer Bachmann checked for outstanding warrants. Officer Lane testified that when he arrived, Hoover was in custody. Officer Bachmann asked Officer Lane to stand with Parker. Officer Lane observed Officer Bachmann walking around while talking on the

radio. Parker asked Officer Lane if he could speak to Officer Bachmann, and Officer Lane granted Parker's request. At that point, Parker asked Officer Bachmann for permission to leave. Officer Bachmann denied Parker's request and asked if he could check Parker for contraband or drugs.

The sequence of events is critical in determining when the encounter between Parker and Officer Bachmann became an investigatory detention. Relying on Judge Caplinger's dissent, Parker asserts that the encounter began as an investigatory detention because Officer Bachmann blocked Parker's car in the driveway. Parker cites *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985), to support his argument. However, *Epperson* can be distinguished. In *Epperson*, the police officer made a show of authority by parking his car in the middle of the street and blocking the defendant's car. The officer then called out to the defendant as he was walking away from the car. The officer knew that he was blocking the defendant's car because he had observed the defendant get out of the car while he was parking.

In this case, Officer Bachmann did not know Parker or recognize Parker's car when he pulled into the driveway. Officer Bachmann testified that he did not remember exactly where he parked his car and did not know if he had blocked the driveway. Unlike the facts in *Epperson* where the officer clearly intended to block the defendant's car, we cannot infer from the record that Officer Bachmann intended to prevent Parker from leaving by parking behind Parker's car in the driveway. In addition, Officer Bachmann did not call or yell at Parker as he was walking away. On the contrary, Parker approached Officer Bachmann's car before Officer Bachmann spoke to him or even exited the vehicle.

Parker relies solely on the position of Officer Bachmann's car to establish a show of authority. Parker has failed to point to any evidence in the record to prove that the position of Officer Bachmann's car was intended to prevent him from leaving. Absent facts to establish an intent to block Parker's car, we cannot conclude that the placement of the car is sufficient to establish a show of authority.

Likewise, Parker fails to point to any other affirmative actions by Officer Bachmann to establish a show of authority when he first encountered Parker. This case is distinguishable from *Morris*, where the officers activated their emergency lights behind a parked car occupied by the defendant. The *Morris* court specifically relied on the activation of the officers' emergency lights in concluding that the encounter was not voluntary. 276 Kan. at 20. Unlike the officers in *Morris*, Officer Bachmann did not activate his emergency lights. Without other evidence to establish a show of authority, we cannot conclude that the placement of Officer Bachmann's patrol car is sufficient to establish a show of authority. As a result, we conclude that the initial encounter between Officer Bachmann and Parker was consensual.

Because the encounter began voluntarily, we must next determine when the encounter became an investigatory detention. We decline to adopt the position held by Judge Caplinger, who concluded that the encounter became an investigatory detention at the latest when Officer Bachmann asked Hoover and Parker to lift their shirts to check for weapons. Although asking them to lift their shirts can be considered a search, both Hoover and Parker consented to the search by immediately complying with Officer Bachmann's request without objection. See *United States v. Baker*, 78 F.3d 135 (4th Cir. 1996) (directing defendant to raise his shirt above a triangular-shaped bulge was reasonable manner of conducting a protective search); *Coronado v. State*, 79 P.3d 311 (2003) (asking defendant to raise her shirt was an unreasonable search because there was no reasonable suspicion that she was armed and dangerous). Parker's consent to the weapon search was consistent with a voluntary encounter.

However, the evidence does not support the district court's and the Court of Appeals' conclusions that the encounter was consensual until Officer Bachmann received information that there was a possible warrant for Galbreath. Before receiving any information about a possible warrant for Galbreath, Officer Bachmann and Officer Goodman searched and arrested Parker's friend Hoover. Parker stood by and watched as Hoover was searched and arrested. The officers made a show of their authority when they arrested

Hoover, and it was reasonable for Parker to believe that he was not free to leave at that point. This conclusion is supported by Officer Lane's testimony that Officer Bachmann asked him to stand with Parker while Officer Bachmann went to the garage and was talking on the radio. It is further supported by Officer Lane's testimony that Parker requested permission to speak with Officer Bachmann, and Officer Lane granted Parker's request. If Parker had been free to leave, Officer Lane would not have been told to stand by with him. Moreover, Parker would not have had to seek permission to speak with Officer Bachmann. Because Parker would not have felt free to disregard the police and go about his business after Hoover was searched and arrested, the officers' encounter with Parker became an investigatory detention at that point.

An investigatory detention must be supported by specific and articulable facts which raise a reasonable suspicion the person has committed, is committing, or is about to commit a crime. K.S.A. 22-2401(1); *Morris*, 276 Kan. at 24.

" 'Reasonable suspicion is a less demanding standard than probable cause, not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors, quantity and quality, are considered in the totality of the circumstances that must be taken into account when evaluating whether reasonable suspicion exists.' " *Morris*, 276 Kan. at 24.

To determine whether Parker was illegally detained, we must consider whether the officers had reasonable suspicion to believe that Parker had committed, was committing, or was about to commit a crime when Hoover was arrested. At that point, the officers knew that three black men were sitting in a garage in a predominantly black community. It was mid-morning, and no one had reported any illegal activity. Officer Bachmann, who had patrolled the area for approximately 23 years, did not recognize the men in the garage as criminals or gang members. He drove up to the garage because he was curious about whether the men lived in the apartments. As Officer Bachmann drove up, Hoover looked sur-

prised, stood up, stuffed something in his pocket, and then began picking money up from the concrete floor. Another unidentified man got up and went into a nearby apartment before Hoover and Parker approached Officer Bachmann's car and entered into a conversation with him. In response to Officer Bachmann's request, both men voluntarily raised their shirts to demonstrate that neither of them was carrying a weapon. We conclude that this evidence is insufficient to establish a reasonable suspicion that Parker had committed, was committing, or was about to commit a crime. Consequently, we hold that Parker was illegally detained at the time when Officer Bachmann asked Parker if he could check him for any contraband or drugs.

However, concluding that Parker was illegally detained does not end our analysis. Before concluding that the evidence must be suppressed, we must determine whether Parker purged the taint of the illegal detention and waived his Fourth Amendment protection by consenting to Officer Bachmann's request to search him. The State has the burden of proving by a preponderance of the evidence that Parker's consent was voluntary. Voluntariness is a question of fact that must be decided in light of the totality of the circumstances. *State v. Jones*, 279 Kan. 71, 77, 106 P.3d 1 (2005). Ordinarily, we review the district court's decision regarding the voluntariness of the defendant's consent to determine whether the district court's findings are supported by substantial competent evidence. 279 Kan. at 77. When the district court does not make any findings regarding the voluntariness of consent, we review the question by applying a de novo standard. 279 Kan. at 77. The district court in this case did not analyze Parker's consent because it concluded that the investigatory detention was proper. As a result, we must determine whether the facts support a voluntary consent.

" '[C]onsent "must be given voluntarily, intelligently, and knowingly." [Citation omitted.] "[I]t must be clear that the search was permitted or invited by the individual whose rights are in question without duress or coercion." "To be voluntary, the defendant's consent must be "unequivocal and specific." ' " *Jones*, 279 Kan. at 78. The court must also consider whether the individual was informed

of his or her rights. Simply submitting to lawful authority does not equate to consent. *Jones*, 278 Kan. at 78.

When the defendant's consent to search is preceded by a Fourth Amendment violation, the State must also prove that there was a break in the causal connection between the illegality and the evidence obtained as a result of it. *State v. Hardyway*, 264 Kan. 451, 465, 958 P.2d 618 (1997) (Lockett, J., dissenting); *State v. Kermoade*, 33 Kan. App. 2d 573, 581, 105 P.3d 730 (2005). Voluntariness of a consent is measured by the proximity in time of the Fourth Amendment violation to the consent, the intervening circumstances, and the purpose and flagrancy of the officers' misconduct. *Hardyway*, 264 Kan. at 465.

When Parker consented to Officer Bachmann's request, he was surrounded by police officers and his friend had just been searched and arrested. Parker had not been advised of his *Miranda* rights prior to Officer's Bachmann's request to search. The only intervening event between Parker's illegal detention and Officer Bachmann's request to search him was the discovery of a possible warrant for Quincy Galbreath, the false name Parker used. Parker had given Officer Bachmann a false name because he was on parole, indicating that he was concerned that Officer Bachmann would arrest him if he knew his real identity. When he was told about the possible warrant for Galbreath, Parker anticipated that he would be arrested and searched incident to the arrest. Based on this evidence, it appears that Parker's consent was merely a submission to Officer Bachmann's authority rather than a voluntary, knowing, and intelligent waiver of his rights. Therefore, the consent did not purge the illegality of Parker's detention and did not waive his Fourth Amendment protections. See *Kermoade*, 33 Kan. App. 2d at 581-82.

Because Parker was illegally detained without reasonable suspicion when Officer Bachmann asked to search him and Parker did not purge the taint of his illegal detention by voluntarily consenting to the search, we hold that the cocaine must be suppressed. Without the cocaine, Parker asserts that his conviction must be reversed for insufficient evidence.

When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Hayden*, 281 Kan. 112, 132, 130 P.3d 24 (2006).

To establish Parker's guilt for possession of cocaine, the State had to prove the following beyond a reasonable doubt:
1. That Parker possessed or had under his control cocaine;
2. That Parker did so intentionally; and
3. That the act occurred within the statute of limitations and the district court's jurisdiction. See PIK Crim. 3d 67.13.

The State was required to prove beyond a reasonable doubt that Parker possessed cocaine. However, without the cocaine, the prosecution's evidence is limited to the officer's testimony that Parker had a plastic bag in his fist, that he ran when the officer noticed the plastic bag, and that he threw the plastic bag on the ground after he was apprehended. There is no testimony describing the contents of the plastic bag. Consequently, the State cannot prove beyond a reasonable doubt that Parker possessed cocaine. Because the evidence is insufficient to support Parker's conviction, his conviction must be reversed and subsequent sentence vacated.

Based on our conclusion that Parker was illegally detained and searched, we reverse the decisions of the Court of Appeals and the district court. We conclude that the district court should have granted Parker's motion to suppress the cocaine. We further reverse Parker's conviction for possession of cocaine for insufficient evidence and vacate his sentence.

LUCKERT, J., not participating.

LOCKETT, J. Retired, assigned.

BEIER, J., concurring: I respectfully concur with my colleagues in their result in this case and in most of the rationale for that result. I depart from their reasoning only on the point in time when the encounter between Officer Bachmann and the defendant ceased to be consensual and became an investigative detention.

Like Judge Caplinger of the Court of Appeals panel, I think that point occurred when the officer asked defendant and his companion to lift their shirts so that the officer could be reassured about whether they were armed. This was a *Terry* search for the protection of the officer, and defendant's prompt compliance cannot be logically or legally equated with consent. See *Terry v. Ohio*, 392 U.S. 1, 18, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Because the officer possessed no reasonable suspicion at that point in time to justify such a search, defendant's Fourth Amendment rights were violated.

ALLEGRUCCI, J. and LOCKETT, J., Retired, join in the foregoing concurring opinion.