(217 P.3d 42)
No. 100,728

STATE OF KANSAS, *Appellee*, v. VICKI L. JOHNSON, *Appellant.*
Petition and Cross-petition for review granted July 1, 2010.

Opinion filed October 9, 2009.

*Randall L. Hodgkinson* and *Sean G. Wittmore*, legal intern, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

RULON, C.J.: Defendant Vicki Johnson appeals her conviction of possession of cocaine, challenging the district court's denial of defendant's motion to suppress. Because we conclude the police officer's search in this case went beyond the scope justified by officer safety concerns, we reverse the defendant's conviction and remand the case for further proceedings.

Officer Shannon Tucker was dispatched to an apartment in Wichita for a burglary in progress. The report of a burglary was based on the landlord's call to the police claiming there was a female in the apartment even though the landlord had evicted the occupant and no one was supposed to be in the apartment.

Three officers, including Officer Tucker, responded to the call, drew their weapons, opened the unlocked door of the apartment, and announced their presence. When the officers entered the apartment, two females were present, one of whom was later identified as the defendant. The individuals appeared to be boxing up items to remove from the apartment. Neither female made any move to escape or acted in any way to cause concern for the officers' safety.

Officer Tucker asked the defendant for identification and inquired what she was doing in the apartment. The defendant explained this was her boyfriend's apartment and she was "clearing it out for him." The defendant said her boyfriend had not actually been evicted, but the landlord had asked him to leave. The officers contacted the landlord, who admitted the defendant's boyfriend was requested to leave the apartment but the boyfriend had not actually been evicted. The defendant was not a tenant of the apartment, but the landlord confirmed the defendant was or had been the occupant's girlfriend.

Officer Tucker continued to speak with the defendant in the kitchen of the apartment. The defendant asked if she could have

a cigarette and reached for her purse, which was beyond the defendant's reach. Tucker said "no" and told the defendant he did not want the defendant reaching into the purse or anything else for officer safety reasons. Nevertheless, the defendant continued to reach for the cigarette package and retrieved the package from her purse. Officer Tucker grabbed the cigarette package from the defendant and again explained he did not want the defendant to grab anything without getting permission first for officer safety reasons.

The exact sequence of events is unclear from the record. Officer Tucker may have immediately proceeded to open the cigarette package and look inside. Tucker may have instead looked inside the defendant's purse, saw no weapons, placed the cigarette package on top of the purse, and then looked inside the cigarette package. Either way, when Tucker looked inside the cigarette package, he found what he believed to be a glass crack cocaine pipe. Tucker proceeded to search the defendant's purse and found a prescription pill bottle with the defendant's name on the bottle containing a substance which later tested positive for cocaine.

The State charged the defendant with one count of possession of cocaine, in violation of K.S.A. 65-4160(a). Eventually, the defendant moved to suppress the evidence, arguing there were no grounds justifying the warrantless search of the cigarette package.

Officer Tucker was the sole witness at the suppression hearing. In addition to testifying to the facts set forth above regarding the encounter, Tucker stated his reasons for searching the cigarette package. According to the officer, he took the cigarette package from the defendant and looked inside for officer safety reasons. Tucker was concerned the defendant might be reaching for an instrument or weapon in the defendant's purse. Tucker was concerned there might be a cutting instrument in the purse or in the cigarette package. Officer Tucker had these concerns because he had previously been assigned to an area where prostitutes or people involved with drugs would carry a razor blade or Exacto knife in a cigarette package.

Importantly, Officer Tucker testified he neither suspected the defendant of prostitution nor did Tucker pat-down search the fe-

male defendant for weapons. Tucker further testified he did not call for a female officer to conduct a pat-down search of this female defendant. Tucker testified he suspected this female defendant might have a razor blade in the cigarette package because "she was so adamant on gaining access to the cigarette pack."

After hearing the officer's testimony and argument from counsel, the district judge found:

"Commonsense hindsight would clearly indicate that no burglary was in progress. However, the facts and situation as it existed and were presented to Officer Tucker on January 31st, 2007, did at that time arguably raise the issue of officer safety to Officer Tucker. Regardless of however weak that might appear later with hindsight. As such, I'm going to deny the motion."

The case proceeded to trial on stipulated facts, with the defendant preserving her objection to the evidence based on the grounds in the motion to suppress. The district court reaffirmed the decision not to suppress, stating the officer safety issue was "barely" in favor of the State, and found the defendant guilty as charged.

On appeal, the defendant argues Officer Tucker lacked reasonable suspicion to detain her and search the cigarette package because the seizure and search exceeded the scope of the officer's safety detention of the defendant.

The State contends the totality of the circumstances shows Officer Tucker's search and seizure was justified as an officer safety search during an investigatory detention.

When, as here, the material facts to the district court's decision on a suppression motion are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Fitzgerald*, 286 Kan. 1124, 1126, 192 P.3d 171 (2008).

Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *Fitzgerald*, 286 Kan. at 1127. There are several such exceptions, but the parties agree the exception at issue in this case is the investigatory detention "stop and frisk" exception set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The *Terry* exception is codified in Kansas as K.S.A. 22-2402, which reads:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name, address of such suspect and an explanation of such suspect's actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, such officer may take and keep it until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person."

See *State v. Anderson*, 281 Kan. 896, 902, 136 P.3d 406 (2006).

The defendant sets forth a three-pronged argument on appeal. We will examine each of her three arguments in turn.

### Reasonable Suspicion for Detention

First, the defendant argues the officers' reasonable suspicion for detaining her, based upon the reported burglary of the apartment, had dissipated by the time of the search of the cigarette package. The defendant argues the landlord "basically verif[ied]" her story to police, thereby removing any reasonable suspicion the defendant was not authorized to be in the apartment or that a crime was taking place. The defendant contends because reasonable suspicion no longer existed for an investigatory detention under K.S.A. 22-2402(1), Officer Tucker could not properly seize and search the cigarette package under K.S.A. 22-2402(2).

The State contends the defendant failed to raise this ground for suppression before the district court and is therefore precluded from advancing this argument on appeal. The State nevertheless asserts the officers had a duty to investigate the reported burglary and determine from the landlord of the apartment whether the defendant had permission to be in the apartment removing property. Until such permission was confirmed, reasonable suspicion remained to justify the detention.

A review of the defendant's suppression motion and the defendant's arguments before the district court reveals the defendant did not articulate an argument based upon the dissipation of reasonable suspicion justifying an investigatory detention under K.S.A. 22-

2402(1). Instead, the defendant's arguments focused on the lack of reasonable suspicion regarding concern for officer safety as required to justify a limited search under K.S.A. 22-2402(2).

On appeal, a defendant may not present reasons for suppression that were not presented to the district court. See *State v. Mack*, 255 Kan. 21, 27-28, 871 P.2d 1265 (1994); *State v. Birth*, 37 Kan. App. 2d 753, 775, 158 P.3d 345, *rev. denied* 284 Kan. 947 (2007), *cert denied* 170 L. Ed. 2d 122 (2008).

The defendant did not offer this argument to the district court and, therefore, may not advance such issue on appeal.

Further, the defendant's argument would likely fail on its merits, as the officers were arguably justified in detaining the defendant, a nontenant of the apartment who appeared to be removing items from the apartment.

### *Reasonable Suspicion Justifying an Officer Safety Search*

The defendant next argues Officer Tucker did not have an "articulable *individualized* suspicion" as required to justify an officer safety search under K.S.A. 22-2402(2). The defendant argues Tucker's experience with hidden weapons was confined to drug and prostitution situations and consequently Tucker could not reasonably suspect the defendant of using this method of concealment unless Tucker suspected the defendant of involvement in drugs or prostitution.

The State contends there was reasonable suspicion justifying the officer safety search based upon the totality of the circumstances, including the report of a burglary, the officer's directive the defendant not reach into her purse, and the defendant's decision to ignore this directive and reach into her purse.

*Terry* and K.S.A. 22-2402(2) permit a minimal search of a detained person for the limited purpose of ensuring the police officer's safety, provided the officer has reasonable suspicion that such a search is required for the officer's personal safety. The officer must have prior knowledge of facts, observe conduct of the detained person, or receive responses from the detained person that, in light of the officer's experience, would give rise to reasonable suspicion that such a search is necessary. *State v. Davis*, 28 Kan.

App. 2d 75, 81, 11 P.3d 1177 (2000), *rev. denied* 270 Kan. 900 (2001); see *Terry*, 392 U.S. at 20-29. This is an objective, not subjective, standard. *Terry*, 392 U.S. at 21-22, 27.

This issue presents a close call. On one hand, the defendant's encounter with the police up to the time of the search provided little, if any, indication the defendant would have been armed or dangerous to the officers. The defendant did not resist or attempt to flee when the officers entered the apartment. Officer Tucker testified the defendant took no actions at the beginning of the encounter to raise concerns for the officers' safety. The landlord confirmed the defendant was the tenant's girlfriend, the boyfriend had been ordered to leave the apartment, and the boyfriend had been arrested and was in jail. This was consistent with the defendant's story she was packing and moving items for her boyfriend. Obviously, because the boyfriend had been arrested and was in jail, the boyfriend could presumably not remove the items. There is nothing in this pattern of events and information which would provide police officers with reasonable suspicion officer personal safety was at risk.

On the other hand, Officer Tucker testified the defendant ignored Tucker's directive the defendant was not to smoke a cigarette or reach into her purse. Tucker further testified, in his experience, that razor blades have been kept in cigarette packages. Tucker's position is weakened by the fact the specific situations he cited for razor blade concealment (drugs and prostitution) were not similar to the fairly innocuous situation Tucker faced here.

Although a close call, we conclude in light of the totality of the circumstances Officer Tucker had sufficient reasonable suspicion to believe officer safety might be at risk. The officers were at the apartment to investigate the presence of a nontenant who was moving property. The encounter in the kitchen arguably occurred at close quarters and fairly rapidly. The defendant disobeyed Tucker's order and continued a course of action Tucker interpreted as a possible threat to his safety. Consequently, Officer Tucker had sufficient reasonable suspicion to take *some* action, but the final question for us is whether Tucker's actions exceeded the permissible scope under the officer safety justification for the search.

## Scope of Search

The defendant contends in her final argument that Officer Tucker's search of the cigarette package exceeded the permissible scope of action given the officer safety rationale relied upon by the State. The defendant argues the officer safety concern dissipated once the cigarette package was removed from the defendant's possession.

The State contends the scope of Officer Tucker's search was confined to that which was "minimally necessary to determine whether defendant had a weapon and to disarm her if he discovered a weapon."

Although the *Terry* stop and frisk for officer safety was originally set forth as a pat-down search of a person, subsequent case law has expanded the permissible scope of such a search to the area within the immediate control of the person from which the person might gain access to a weapon, or contraband, such as the passenger compartment of an automobile. See *Michigan v. Long*, 463 U.S. 1032, 1045-51, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983).

The cigarette package at issue here may be compared to a purse for the purpose of this analysis, since the cigarette package was retrieved from the purse the defendant had within reach of her person but not from within the defendant's clothes. This comparison is helpful because there is case law addressing the search or seizure of a purse in the *Terry* officer safety context. In the factual scenario here, the defendant's retrieval and possession of the cigarette package is functionally equivalent to her retrieval and possession of a purse.

The question for us is whether, once Officer Tucker had seized the cigarette package and thereby removed the package from the defendant's possession, Officer Tucker still had sufficient officer safety concerns under *Terry* to justify his search of the cigarette package and purse.

Decisions from other jurisdictions indicate that "[g]enerally, once a purse is no longer in its owner's possession, a protective search of the purse is not justified pursuant to *Terry*." See *In re Tiffany O.*, 217 Ariz. 370, 373-74, 174 P.3d 282 (Ariz. App. 2007) (citing cases from Oregon, Michigan, and Minnesota).

In *Tiffany O.*, police officers responded to a 911 call from the mother of a 14-year-old girl reporting the girl was suicidal. The officers approached the girl on the street, and one officer immediately seized the girl's purse, opened it, and found a marijuana pipe. The officer claimed justification for the search as a search for a weapon with which the girl might harm herself or the officer, citing the initial report by the mother in which the mother had reported the girl as suicidal and "completely out of control," and the officer testified the girl " 'was very agitated, mad, angry, verbal, loud.' " 217 Ariz. at 373. Although the *Tiffany O.* court assumed the facts justified the seizure of the girl's purse, the court held the facts did not justify the officer's further action in searching the purse. Recognizing such justification depended on the totality of the circumstances, the court concluded there were not sufficient circumstances to justify the search. 217 Ariz. at 373-75.

The Indiana Court of Appeals has recently decided a similar issue in a case in which the defendant was a passenger in a vehicle pulled over for speeding. *Webster v. State*, 908 N.E.2d 289 (Ind. App. 2009). Before the vehicle was pulled over by the officer, the vehicle stopped and the defendant exited the vehicle so she could go to work nearby. The defendant watched the traffic stop from across the street. The officer conducting the stop instructed the defendant to return to the vehicle because the officer thought the vehicle registration might be in her purse. As the defendant crossed the street, the officer noticed the bottom of the purse " 'appeared to be stretched' " as if to conceal a gun. 908 N.E.2d at 291. The officer began to approach the defendant telling her to not put her hands in her purse. Nevertheless, the defendant began to reach in her purse, saying she was getting her ID, even though the officer told her again not to reach in her purse. The officer ran to the defendant and grabbed her and the purse, telling the defendant to release the purse. However, the defendant refused and tried to pull away from the officer. The officer took the defendant to the ground, handcuffed her, and seized the purse. The officer then opened the purse and found cocaine.

Relying solely on a provision of the Indiana Constitution which contains the same wording as the Fourth Amendment to the

United States Constitution, the *Webster* court held the search of the purse was unreasonable, concluding the officer's concern about the stretching of the purse was "clearly based on mere speculation." 908 N.E.2d at 292. The *Webster* court held once the officer seized the purse, "any gun that might have been in it posed little threat to his safety." 908 N.E.2d at 293.

Here, by the time of the search and seizure, this defendant had offered Officer Tucker a plausible innocent explanation for her presence at the apartment, which was verified by the landlord. Tucker's concerns were raised when the defendant retrieved the cigarette package after Tucker told the defendant not to reach in her purse. Tucker cited his previous experience with individuals who would hide razors in cigarette packages. However, such individuals were involved in drugs and prostitution, neither of which Tucker connected with this defendant. This leads us to the conclusion Tucker's search of the cigarette package was an impermissible warrantless search.

Our conclusion is supported by the United States Supreme Court's recent decision in *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d 485, 129 S. Ct. 1710 (2009). Although *Gant* involved the vehicle-search-incident-to-arrest exception to the warrant requirement as formulated in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), this exception is partly justified by the same officer safety rationale that underlies the *Terry* exception at issue here. See *Gant*, 332 U.S. at 338. Concluding the vehicle-search-incident-to-arrest exception had been improperly broadened to allow a vehicle search incident to *any* arrest, the Supreme Court narrowed the exception by holding such warrantless searches are proper "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 332 U.S. at 351. Our Supreme Court recently relied on *Gant* in striking down part of Kansas' warrantless-search-incident-to-arrest statute, K.S.A. 22-2501(c). See *State v. Henning*, 289 Kan. 136, 148-49, 209 P.3d 711 (2009).

Conviction reversed and case remanded for further proceedings.

* * *

HILL, J. dissenting: I must respectfully dissent. The majority holds that Officer Tucker had legitimate reasons to seize the cigarette pack from the defendant. I agree. In circumstances such as these, a police officer must decide, within seconds, whether to allow the defendant to grab something from her purse. Johnson disobeyed Officer Tucker's directive to not reach into her purse. Officer Tucker knew from experience that people involved with drugs and prostitution often carried razors in cigarette packages. Based on Officer Tucker's training, experience, and instincts honed by experience, he thought it important to secure the cigarette pack from this woman's grasp. After considering all the circumstances, the district court held this search reasonable, as would I.

I do not agree with the majority's conclusion. As I understand its ruling, once the officer seized the cigarette pack, he could not legally examine the contents of the cigarette pack to see if it held a weapon about which he was concerned. The majority concludes, after the fact, that since Officer Tucker had not suspected Johnson was involved in the drug trade before he seized the cigarette pack, the search of the cigarette pack was impermissible since it was no longer in her control. Does this mean that an officer can lawfully seize a container for his or her protection but then not examine its contents to discover if there is indeed danger? If that indeed is the rule, I pray the container has no exploding device.

Citing cases from other jurisdictions, the majority firsts makes the comparison of a cigarette pack to a purse. Then the majority compares a purse to a car and refers to *Arizona v. Gant*, 556 U.S. 332, 173 L. Ed. 2d. 485, 129 S. Ct. 1710 (2009), as support. Obviously, the majority thinks a cigarette pack is comparable to a car. I find this reasoning strained for the circumstances and expectations of privacy surrounding such searches are different. We must have some sense of reasonable proportion here. A glance inside an open cigarette pack is not the same intrusion as an officer pawing through the contents of a purse nor is it the same as a methodical search of a car for weapons or contraband. I would not hold that one has the same expectation of privacy in a cigarette pack as one's expectation of privacy in a purse, a container of valuables and per-

sonal items. Nor do I find a cigarette pack the same as a car, a conveyance capable of holding many things. The majority stretches the point when making the analogy of a cigarette pack with an automobile.