No. 100,728

STATE OF KANSAS, *Appellee*, v. VICKI L. JOHNSON, *Appellant*.

(270 P.3d 1135)

Opinion filed March 2, 2012.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Sean G. Whittmore*, legal intern, was with him on one of the briefs for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This case arises on the parties' cross-petitions for review. The State takes issue with the Court of Appeals majority's ruling that police were not permitted to search a cigarette pack seized from the defendant out of a concern for officer safety, necessitating reversal of defendant Vicki L. Johnson's conviction for possession of cocaine. Johnson challenges the existence of reasonable suspicion to justify continuation of her investigatory detention and the officer safety-based seizure and search of the cigarette pack.

We hold that the Court of Appeals got it right and Johnson's motion to suppress should have been granted. ·

## FACTUAL AND PROCEDURAL BACKGROUND

The events leading to Johnson's conviction began when Wichita Police Officer Shannon Tucker was dispatched to an apartment on a report of a burglary in progress. The reporting individual had told the dispatcher that the apartment's tenant had been evicted and that an unknown woman was inside the apartment and removing items. Tucker and two or three other officers entered the unlocked apartment with their guns drawn, announcing their presence.

The officers found Johnson and another woman inside the apartment, packing the tenant's belongings. Johnson told the officers that the tenant was her boyfriend. One officer called the landlord, later revealed to be the individual who reported the burglary, and the landlord confirmed that Johnson was the tenant's girlfriend. The landlord also confirmed that the boyfriend had been asked to move out of the apartment after his arrest the prior evening.

Neither Johnson nor the other woman did anything to make the officers suspect a burglary, and neither attempted to leave. Tucker continued to question Johnson alone in the kitchen, but there is some lack of clarity about the exact sequence of events during Johnson's questioning.

At the district court's hearing on Johnson's eventual suppression motion, Tucker first testified that Johnson asked if she could have a cigarette and began reaching inside her purse. Tucker told Johnson not to reach inside her purse for officer safety reasons. Johnson

then continued to reach for her cigarettes, and Tucker grabbed the cigarette pack out of her hand, again explaining about officer safety.

Tucker also testified, however, that, as Johnson was reaching into her purse for her cigarettes, she simultaneously asked if she could smoke. He told her not to get her cigarettes because of his concern for officer safety. Johnson paused and then continued to reach into her purse. Tucker said he then grabbed the pack of cigarettes out of Johnson's hand and placed the pack on top of her purse on the kitchen counter. As he put the pack on her purse, he again explained his concern for officer safety.

Tucker's testimony also varied somewhat on exactly when he opened the cigarette pack. He may have opened the pack and looked inside it immediately after grabbing it out of Johnson's hands. Alternatively, he may have grabbed the pack, placed it on Johnson's purse, shone a flashlight into Johnson's purse to check for a weapon, and then picked up and opened the cigarette pack. Under this scenario, Tucker testified, after he placed the cigarette pack on top of Johnson's purse, she did not attempt to reach for the pack again, although he feared she might. Tucker did not pat down Johnson or call for a female officer to conduct such a search of Johnson.

However he obtained the cigarette pack, Tucker then looked inside it and discovered a glass pipe. This led Tucker to thoroughly search Johnson's purse, where he found a prescription pill bottle with Johnson's name on it. The bottle contained a substance that later tested positive for cocaine.

Tucker also testified that, at the time he was talking to Johnson in the kitchen, he did not yet know whether she had the tenant's permission to be in the apartment. Another officer was in the process of contacting the tenant at the county jail. Tucker believed, however, that Johnson had gained access to the apartment with a key.

On the subject of officer safety, Tucker testified that he was concerned the cigarette pack could conceal a sharp object, such as a razor blade. He based this concern primarily on his experience dealing with prostitutes and drug dealers, but he did not believe Johnson was a prostitute or drug dealer. At the suppression hear-

ing, the district judge specifically asked about Tucker's apprehension regarding what the cigarette pack might contain:

"A. [by Tucker:] Basically the main thing that alerted me that night was that she was so adamant on gaining access to the cigarette pack.
"Q. [by Judge:] Because she said she wanted to smoke.
"A. She asked for a cigarette. I explained to her, though, that I would rather not do that at that time due to officer safety, and she continued to go in the cigarette pack, yes, sir.
"Q. You said you'd rather her not do that or you told her not to do it absolutely?
"A. I told her not to, sir.
"Q. All right."

After hearing Tucker's testimony and the arguments of the parties, the district judge ruled:

"Commonsense hindsight would clearly indicate that no burglary was in progress. However, the facts and situation as it existed and were presented to Officer Tucker on January 31st, 2007, did at that time arguably raise the issue of officer safety to Officer Tucker. Regardless of however weak that might appear later with hindsight. As such, I'm going to deny the motion."

Johnson's case proceeded to a bench trial on stipulated facts, and Johnson renewed her objection to the evidence resulting from Tucker's search. The district judge reaffirmed his suppression ruling, stating that his ruling on the officer safety exception to the warrant requirement was "barely" on the side of the State. The district judge found Johnson guilty as charged.

On appeal, Johnson argued that the search and seizure of her cigarette pack violated the Fourth Amendment to the United States Constitution because: (1) any suspicion that Johnson was committing a burglary had dissipated by the time of her conversation with Tucker in the kitchen area, so there was no basis for her further detention; (2) no articulable individualized suspicion existed to justify Tucker's seizure of the cigarette pack; and (3) even if the seizure of the cigarette pack was justified, Tucker's subsequent search of the pack was not justified, because any threat was neutralized by seizure of the pack.

The Court of Appeals bypassed Johnson's first argument as unpreserved and, if preserved, meritless because of the ongoing effort to check whether the tenant had given Johnson permission to enter

the apartment and pack his belongings. *State v. Johnson*, 42 Kan. App. 2d 799, 804, 217 P.3d 42 (2009). The panel regarded its decision on Johnson's second argument as "close" but ultimately held the totality of circumstances justified seizure of the cigarette pack to protect the officers. 42 Kan. App. 2d at 805. But the majority sided with Johnson on her third argument, ruling Tucker was not permitted to search the pack of cigarettes after removing it from Johnson's control. 42 Kan. App. 2d at 808. Judge Stephen D. Hill dissented.

## DISCUSSION

"The factual underpinnings of a decision on a motion to suppress are reviewed for substantial competent evidence and the ultimate legal conclusion drawn from those facts reviewed de novo." *State v. Anderson*, 281 Kan. 896, 900, 136 P.3d 406 (2006); see *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890, *cert. denied* 555 U.S. 1062 (2008); *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). This court does not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence. *Smith*, 286 Kan. at 406. It is the State's burden to demonstrate that a challenged seizure or search was lawful, *Anderson*, 281 Kan. at 901 (citing *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 [2003]), as long as the defendant had a legitimate expectation of privacy protected by the Fourth Amendment. See *Rakas v. Illinois*, 439 U.S. 128, 130-31 n.1, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) (citing *Simmons v. United States*, 390 U.S. 377, 389-90, 88 S. Ct. 967, 19 L. Ed. 2d 1247 [1968]; *Jones v. United States*, 362 U.S. 257, 261, 80 S. Ct. 725, 4 L. Ed. 2d 697 [1960]); *United States v. Hernandez*, 647 F.3d 216, 219-20 (5th Cir. 2011).

*No Preservation of State's Expectation of Privacy Argument*

In its supplemental brief to this court, the State argues that Johnson had no reasonable expectation of privacy in the cigarette pack.

The State did not make an issue of the sufficiency or quality of Johnson's expectation of privacy either before the district court or before the Court of Appeals. The prosecutor admitted at oral argument before this court that the issue's sudden appearance in the

supplemental brief is directly attributable to Judge Hill's dissent from the panel majority. Judge Hill took the position that an individual has a reduced expectation of privacy in a cigarette pack. See *Johnson*, 42 Kan. App. 2d at 809.

We generally refuse to consider an issue on appeal if it has not been raised in the district court. See, *e.g., State v. Shadden*, 290 Kan. 803, 813, 235 P.3d 436 (2010). Specifically, we have rebuffed a defendant's effort to advance new reasons to support suppression for the first time on appeal. See *State v. Mack*, 255 Kan. 21, 27-28, 871 P.2d 1265 (1994). What is sauce for the goose is sauce for the gander, and the State's mirror image effort to advance new reasons to avoid suppression must likewise be rejected.

We also note that Supreme Court Rule 6.02(e) (2011 Kan. Ct. R. Annot. 39) provides that an appellant must "explain why" an issue not considered in district court should be considered for the first time on appeal. *State v. Perez*, 292 Kan. 785, 789, 261 P.3d 532 (2011). The State has provided no such explanation here, although its forthright attribution of the idea to Judge Hill is appreciated.

For all of the foregoing reasons, we do not address the merits of the State's argument that Johnson lacked a reasonable expectation of privacy in the cigarette pack, instead assuming that the seizure of the pack and the ensuing searches are subject to analysis for application of the exceptions to the Fourth Amendment's warrant requirement.

*No Preservation of Defendant's Investigatory Detention Argument*

Johnson first argues that no reasonable suspicion existed to continue her investigatory detention and questioning in the kitchen, but she failed to raise this point before the district court. As we previously noted and as the Court of Appeals correctly held, issues not raised before the district court are not preserved for appeal. *Shadden*, 290 Kan. at 813. Johnson fails to provide any explanation for why this court should consider her argument on appeal, and she fails to argue that any of the three recognized exceptions to the general rule apply. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007) (Exception to rule requiring preservation

may be granted if (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; or (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground.). In Johnson's case, even had she argued any of these exceptions, it does not appear that any would apply. We need not—and do not—reach the merits of this challenge.

*Justification of Seizure of Cigarette Pack*

Encounters between a member of the public and law enforcement officers fall into one of four categories: consensual encounters, which are not considered seizures; investigatory detentions, commonly known as *Terry* stops (after *Terry v. Ohio*, 392 U.S. 1, 18, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968], whose parameters are codified in K.S.A. 22-2402); public safety stops; and arrests. See *Thompson*, 284 Kan. at 772 (citing *State v. Parker*, 282 Kan. 584, 588-89, 147 P.3d 115 [2006]). In the present case, we are dealing with an investigatory detention or *Terry* stop under K.S.A. 22-2402.

K.S.A. 22-2402 provides:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, such officer may take and keep it until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person."

To perform the frisk or limited search permitted during an investigatory detention, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27; see *Arizona v. Johnson*, 555 U.S. 323, 327, 330, 129 S. Ct. 781,

172 L. Ed. 2d 694 (2009). Reasonable suspicion is based on the totality of existing circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). "[I]n determining whether the officer acted reasonably . . ., due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. The officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 U.S. 40, 64, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968).

A search for weapons during an investigative detention may include the area within a suspect's immediate control as well as his or her person. See *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). *Terry* recognized that a frisk for weapons constituted "a severe, though brief, intrusion upon cherished personal security," but concluded that such a search was reasonable when weighed against the "need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." *Terry*, 392 U.S. at 24-25.

In this case, Tucker was investigating a reported burglary. At the time he spoke with Johnson in the kitchen, he did not yet know whether Johnson had permission from the tenant to remove his belongings from the apartment. But there was nothing about Johnson that heightened Tucker's suspicion that she was burglarizing the apartment, and he already knew that the landlord had confirmed Johnson's story about her boyfriend being the tenant whom the landlord had asked to leave the apartment the previous evening. Tucker also believed Johnson had a key to the apartment. And Johnson and the other woman had not attempted to leave. None of these facts would have led to a reasonable inference that Johnson was armed and dangerous or that she and the area within her control needed to be searched.

The State nevertheless argues that Johnson fundamentally changed the dynamics of her interaction with Tucker when she

disobeyed Tucker's directive when she continued to reach for her cigarettes after he told her not to do so. As Tucker testified, "[T]he main thing that alerted me that night was that she was so adamant on gaining access to the cigarette pack." In addition, Tucker had experience in drug and prostitution cases in which suspects had hidden razors in cigarette packs.

Both the district judge and the Court of Appeals majority characterized the question of whether officer safety concerns supported the seizure of the cigarette pack as a close one. We agree. We do not regard Tucker's experience with drug and prostitution cases as particularly relevant to his behavior in this case, which, at the time, he believed to be a burglary or no crime at all. But we are persuaded that Johnson's insistence on reaching for her cigarettes despite at least one order to do otherwise, particularly when accompanied by Tucker's explanation of why she had to wait to smoke, was a game changer. It gave Tucker an adequate basis for seizing the cigarette pack to protect himself and his fellow officers. K.S.A. 22-2402(2) permits a law enforcement officer to conduct an officer safety search and remove any potentially dangerous weapons from a suspect's person, as Officer Tucker did when he removed the cigarette pack from Johnson's possession. We hold that the seizure of the cigarette pack was justified under the facts in this case.

*Justification of Search of Cigarette Pack*

The last question we must address is whether Tucker's *search* of the cigarette pack also was justified by *Terry* and K.S.A. 22-2402(2). The Court of Appeals majority said no, drawing an analogy between the cigarette pack and a purse. See *Johnson*, 42 Kan. App. 2d at 806-08 (discussing *In re Tiffany O.*, 217 Ariz. 370, 373-75, 174 P.3d 282 [Ariz. App. 2008] [danger justifying seizure dissipated once officer seized purse; no need to search purse for weapon when purse in officer's control]; *Webster v. State*, 908 N.E.2d 289, 293 [Ind. App. 2009] [once officer secured purse, search of it invalid]).

Courts in other states also have held that a search of a seized cigarette pack exceeded permissible law enforcement action under *Terry*. See *State v. Sheehan*, 767 So. 2d 1 (La. 1999) (search of

cigarette pack from defendant's pocket exceeded scope of *Terry* despite officer's experience finding razor blades); *United States v. Lee,* No. 3:07CR307, 2007 WL 3306674 (E.D. Vir. 2007) (unpublished opinion) (opening of cigarette pack after removing it from suspect exceeded permissible scope of *Terry*); *State v. Kendall,* No. A11-378 2011 WL 2437507 (Minn. App. 2011) (unpublished opinion) (opening of cigarette case went beyond what was necessary, reasonable for officer safety); see also *State v. Barney,* 708 So. 2d 1205, 1208-11 (La. App. 1998) (matchbox removed from defendant's pocket ceased to be threat to officer).

The result and reasoning of our Court of Appeals and our sister states is sound. Indeed, if Tucker's alternate recitation of the order of events is believed, he placed the unopened cigarette pack on top of Johnson's purse within her reach on the kitchen counter. If he, in fact, did so, no action could more convincingly demonstrate that he perceived no danger to himself or his fellow officers. Once Tucker secured the pack of cigarettes, any nonhysterical threat its contents may have posed was eliminated and no further search was permitted.

We also note that the prosecutor's insistence at oral argument that a ruling in Johnson's favor on this point would expose law enforcement officers to a new and unacceptable risk is misguided. To the extent there is a threat, it is not new; and our legislature evidently deemed it acceptable. K.S.A. 22-2402(2)—again, a Kansas codification of *Terry*—specifically allows an officer to seize and keep only items "the possession of which may be a crime or evidence of crime . . . until the completion of the questioning, at which time such officer shall either return it, if lawfully possessed, or arrest such person." It does not permit a general search of any seized item not immediately recognizable as an unlawfully possessed weapon or other evidence of a crime. There may be those who believe smoking to be unwise but, so far, those who indulge in it in private residences are not subject to criminal prosecution. With no authority to search the seized cigarette pack, Tucker was permitted to hold onto it until he finished questioning Johnson. Then he was required to return it to her and let her continue about her business. Without the unlawful search of the cigarette pack

and the cascade of events that followed it, there was not a basis for Johnson's arrest.

Johnson's motion to suppress should have been granted. We therefore affirm the Court of Appeals majority opinion and reverse the judgment of the district court. The case is remanded to the district court for further proceedings consistent with this opinion.

MORITZ, J., not participating.

JAMES FRANKLIN DAVIS, District Judge, assigned.